IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL PULLIAM**, *et al.*, | |
| Plaintiffs, | |
| v. | Civil No. **22-0155 PJM** |
| **CHRISTOPHER ABANGMA**, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION
## AND ORDER TO SHOW CAUSE

Michael Pulliam and Mesi Walton, both acting pro se, have filed suit against Christopher Abangma and A&N Architectural LLC (Defendants), seeking to enforce an arbitration award against them.[1] After some initial missteps, Plaintiffs got the Clerk of the Court to enter a default, against Defendants based on Defendants' apparent failure to respond in timely fashion. No default judgement has been entered, only a clerk's default.

Defendants have since filed Motions to Vacate Entry of Judgment and To Dismiss for lack of Jurisdiction, Document 25, which Plaintiffs oppose, Document 27.

---

[1] Recently, Pulliam, who does not indicate he is an attorney barred in this Court, filed a Line attempting to drop Walton as a Co-Plaintiff, presumably to get around the complete diversity of citizenship requirement discussed infra. Walton has not herself sought to withdraw and Pulliam, as a layman, has no authority to drop her on his own. Accordingly, Walton remains in the case as of now. But looking down the road, even as a sole Plaintiff, Pulliam undoubtedly will face another potentially insuperable hurdle. As co-signatory of the contract that underlay the arbitration award and as co-awardee of the award itself, Walton would be subject to compulsory joinder. *See* Fed. R. Civ. P. 19. To the extent that the Walton's citizenship is in Maryland, which appears to be the case, her compulsory joinder would destroy diversity, leading to ultimate dismissal of the case. *See Strawbridge* v. *Curtiss* (1806) 7 US (3 Cranch) 269.

1

Since there is no default judgment, there is no judgment to vacate[2]. Even so the Court will STRIKE the clerk's entry of default against Defendants and will DEFER ruling Defendants' Motion to Dismiss. *See* e.g. *Pena* v. *Seguros La Comercial SA*, 770 F. 2d 811, 814 (9th Cir. 1988).

Default judgments are disfavored and easily set aside where they are made early in the proceeding, especially where the defendant may be able to suggest one or more good defenses to the suit and where there would be no prejudice to the plaintiff. *See* Fed. R. Civ. P. 55 (c). Defendants clearly meet those criteria here. They filed their request to vacate (again, there is no default judgment to vacate) within a month of the clerk's entry of default; they have raised serious potential defenses, including lack of jurisdiction based on incomplete diversity of citizenship and the absence of a federal question; and especially in view of the fact that Plaintiffs, according to Defendants, have already brought suits on the same arbitration award that is in the present case, at least some of which are currently pending in Maryland state courts.[3]

But having reviewed the court file so far, the Court respectfully suggests to Plaintiffs that they should seriously consider whether they wish to pursue this case in this Court:

1. Thus, there is clearly a no federal question involved in the case. This is essentially a suit seeking enforcement of a private commercial contract. The American Arbitration Act does not raise a federal question for jurisdictional purposes; an independent basis for jurisdiction, such as diversity of citizenship must exist. *See* e.g. *Doctor's Assoc. Inc.* v. *Distago*, 66 F 3d 438 445, 446 (2d Cir. 1995).

---

[2] A clerk's entry of default is not a default judgment. *See* Fed. R. Civ. P. 55.
[3] According to Defendants, Plaintiffs may be under an injunction of the Montgomery County Circuit Court not to file any further litigation so long as the Montgomery County case remains pending. If, indeed, such an injunction is in place, Plaintiffs may find themselves facing contempt proceedings in the Montgomery County Court.

2. Nor does the fact that Defendants may have federal connections raise a federal question. The case must present a necessary disputed, and substantial element under Federal law. 28 U.S.C. § 1331; Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing SAS US 308 (2005).

3. When a dispute arises over whether a plaintiff has established diversity of citizenship, it is the plaintiff's burden to establish the fact of diversity. *See* e.g. *Middleton* v. *Stephenson*, 749 F. 3d 1197 1200-12011 (10th Cir. 2014).

4. Clearly there is a dispute over diversity here:

    a. Both Defendants are legal resident of Maryland.

    b. Both Pulliam and Walton list Lanham, Maryland addresses on their Complaint and both stated, under penalty of perjury, in their requests to proceed without paying the filing fee that Lanham was their "legal residence". Since both Plaintiffs have claimed to be Maryland residents and Defendants indisputably are Maryland residents, there appears to be a lack of complete diversity as between them and Defendants and Plaintiffs should find themselves out of court.

    c. Pulliam, however, for himself alone, in a late-conceived maneuver, has suggested that in fact as of the time of filing suit, i.e. as of January 20, 2022, he was a resident of Illinois. This, he believes, salvages his claim of complete diversity.

    To this end, Pulliam has submitted copies of an Illinois Identification Card (not a driver's license) issued in 2019 and a voter registration card (which may or may not be current), also from the State of Illinois, both of which indicate Chicago as an address, but both of which have the street address blacked out.

3

    These items standing alone do not establish diversity of citizenship for jurisdictional purposes (if indeed these documents even reflect physical residence). Pulliam misapprehends what residency in a state means for diversity of citizenship purposes. It means <u>domicile</u>, not mere physical presence, and domicile means an intent to reside in a state indefinitely. *See e.g. Kantor v. Wellesley Galleries, Ltd.*, 704 F. 2d 1088, 1090 (9th Cir. 1983). Among the indicia of domicile are: e.g., length of residence, employment, location of assets, voting registration, address shown on driver's license, payment of state taxes, receipt of mail, representations in public documents, location of family, connections to the community, etc. [*Middleton* v. *Stephenson*, supra,; *Washington* v. *Hovensa LLC* 652 F3d 340, 344 (3rd Cir. 2011); *Altimore* v. *Mt. Mercy College* 420 F3d 763, 768-769 (8th Cir. 2005); *Acridge* v. *Evangelical Lutheran Good Samaritan Soc.* 334 F3d 444, 448 (5th Cir. 2003). Therefore, assuming Pulliam actually had an intent to reside in Illinois indefinitely as of January 20, 2022, since he has the burden of proof, he will have to prove his bona fides – under oath, which is to say, under penalty of perjury.

d. If, in light of the foregoing, Pulliam chooses to pursue his suit in this Court based on diversity of citizenship, the Court will ORDER him to SHOW CAUSE, that is, it will hold a hearing, where he must demonstrate why his suit should not be dismissed for lack of diversity. The hearing will be set for Tuesday, January 24, 2023 at 11:00 a.m. in Courtroom 4C of this Courthouse, 6500 Cherrywood Lane, Greenbelt, MD 20770.

    e. At the hearing, Pulliam will be required to answer questions under oath regarding the bona fides of his alleged domicile in Illinois as of the time suit was filed, i.e. as January 20, 2022, including;

1. Where he lived, and how long he lived there before and after the date suit was filed;
2. Whether he owned or rented the property where he lived;
3. Whether he had employment in Illinois and what it was;
4. Whether he had a driver's license or bank accounts in the State of Illinois;
5. Whether he received any correspondence with postmarks at the Illinois address;
6. Whether his voter registration for Illinois was active, indicating the last time before this suit was filed, that he actively voted in Illinois;
7. Whether, at any time before, during, and after this suit was filed, he filed any documents in Illinois or elsewhere indicating an Illinois domicile;
8. Whether he filed any documents, at or about the time this suit was filed, indicating that Maryland was either his principal residence or domicile.

Pulliam shall bring with him to the said hearing any and all documents tending to show that his domicile was in fact Illinois as of the date this suit was filed, i.e. as of January 20, 2022 including

- Any lease or deed to the premises where he lived in Illinois
- Any active driver's license from Illinois
- Any active bank accounts from Illinois
- Any correspondence received at the Illinois address
- Any active voter registration card from Illinois

5

- Any federal or state income or property tax and tax returns for 2021 (which would reflect Pulliam's residence as of 12/31/21)

- Any evidence of club or other organizational (including religious groups) membership, indicating an Illinois residence.

As should be evident, the Court is skeptical of Pulliam's recent claim of diversity of citizenship for jurisdictional purposes. However, the Court is willing to give Pulliam every opportunity to demonstrate that he is properly before this Court for jurisdictional purposes.[4] Even so, Pulliam may wish to reconsider whether he wishes to proceed in this Court.

A separate Order will issue.

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[4] This assumes that Co-Plaintiff Walton promptly files a Line seeking to withdraw from the case.